Ronald S. Kravitz (SBN 129704)
rkravitz@linerlaw.com
LINER GRODE STEIN YANKELEVITZ
SUNSHINE REGENSTREIF & TAYLOR LLP
One California Street, Suite 900
San Francisco, California 94111
Telephone:  (415) 489-7700
Facsimile:   (415) 489-7701

Attorneys for Plaintiffs AG NET LEASE
ACQUISITION CORPORATION and AGNL
ANTENNA, L.P.

FILED
2013 OCT 17 PM 3:00
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY_____

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| AG NET LEASE ACQUISITION CORPORATION; and AGNL ANTENNA, L.P., <br><br> Plaintiffs, <br><br> vs. <br><br> RONALD J. BUSCHUR; and KEVIN MICHAELS, <br><br> Defendants. | Case No. SACV13-01631 JVS(RNBx) <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

COMES NOW the Plaintiffs, and state their Complaint against the above-named Defendants, as follows:

## I. INTRODUCTION

1. This case involves false statements made by officers of Powerwave Technologies, Inc. ("Powerwave" or the "Company") to induce Plaintiffs to enter into a real estate transaction. For several quarters in 2010 and 2011, Powerwave inflated its financial results by sending sham bulk orders to one of its main customers resulting in the improper recognition of revenue. Plaintiffs relied on the falsely enhanced financial statements in deciding to purchase from, and then lease back to Powerwave its commercial headquarters in Santa Ana, California in a sale-

leaseback transaction totaling approximately $50 million (the "Transaction"). Once Powerwave's true financial condition came to light, its business failed and it ceased making lease payments to Plaintiffs. The misconduct of Powerwave's officers has caused Plaintiffs to incur several millions of dollars in damages.

## II.   PARTIES, JURISDICTION AND VENUE

2. Plaintiff AG Net Lease Acquisition Corporation ("Acquisition") is a Delaware corporation with its principal place of business in New York.

3. Plaintiff AGNL Antenna, L.P. ("Antenna") is a Delaware limited partnership whose partners are residents of Delaware. Acquisition and Antenna are collectively referred to herein as "AGNL."

4. Defendant Ronald J. Buschur ("Buschur") is, on information and belief, a resident of California. Buschur served as the Company's President and Chief Executive Officer ("CEO") at the time of the Transaction.

5. Defendant Kevin Michaels ("Michaels") is, on information and belief, a resident of California. Michaels served as the Company's Chief Financial Officer ("CFO") at the time of the Transaction.

6. Prior to the Transaction, Buschur and Michaels participated in the issuance of false and misleading statements and failed to disclose the true facts about Powerwave's business. In addition, Buschur and Michaels repeatedly had the opportunity to correct the misstatements and omissions by and on behalf of Powerwave prior to the Transaction, and failed to do so.

7. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states and of foreign states and the amount in controversy exceeds $75,000.

8. This court has personal jurisdiction over Defendants because Defendants, on information and belief, reside in California. Furthermore, with respect to the Transaction that underlies this suit, Defendants directed their activities towards California.

9. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in this district and this action arises from a transaction concerning a piece of real estate in this district.

## III. POWERWAVE AND DEFENDANTS USE FALSE FINANCIAL STATEMENTS TO INDUCE PLAINTIFFS TO ENTER INTO THE TRANSACTION

10. In 2011, Powerwave was seeking to raise capital. To that end, Powerwave announced on July 20, 2011 that it was issuing $100 million in Convertible Senior Subordinated Notes due 2041. In addition, Powerwave sought to raise capital by selling its headquarters to an investor and lease it back.

11. In order for AGNL to be willing to enter into the Transaction, Powerwave needed to convince AGNL that it was financially sound, and would therefore be able to make the necessary lease payments. As a result, Powerwave provided its public financial statements, signed by Defendants, to AGNL, including the Form 10-K for the year 2010 (the "2010 10-K"), and the Form 10-Q filings for the first two quarters of 2011 (the "1Q11 10-Q" and the "2Q11 10-Q").

12. In the 2010 10-K, the 1Q11 10-Q, and the 2Q11 10-Q, defendants made false and misleading statements about the Company's performance in the third quarter of 2010 ("3Q10"), the fourth quarter of 2010 ("4Q10"), the first quarter of 2011 ("1Q11") and the second quarter of 2011 ("2Q11"). In particular:

   a. Defendants concealed the extent to which the Company's revenues had been achieved through improper and unsustainable sales practices, including last-minute 3Q10 and 4Q10 $15 million bulk orders to Team Alliance that included a right of return if Team Alliance could not re-sell the product, the last minute 1Q11 $15 million bulk order to Team Alliance of defective product that would be replaced in a later quarter, and the last-minute 2Q11 $25 million bulk order that explicitly waived payment, all of which bulk orders were unconnected to

actual demand.

      b.     Defendants omitted disclosure of the true nature and substance of the 3Q10, 4Q10, 1Q11, and 2Q11 end-of-quarter bulk orders with Team Alliance in the February 17, 2011 Report on Form 10-K and statements detailed above, or the material risks those practices posed to Powerwave's future financial results.

      c.     Powerwave's reported financial results were the result of an accounting scheme employing improper accounting practices in violation of GAAP and SEC revenue recognition requirements.

      d.     Powerwave's purported demand was a result of unsustainable business practices of forcing more products through its sales channels with the end-of-quarter bulk orders to Team Alliance than Powerwave's customers could reasonably expect to absorb, thereby cannibalizing sales from future periods.

13.    AGNL relied on the financial information contained in Powerwave's financial statements, and accordingly agreed to enter into the Transaction.

14.    On October 18, 2011, Powerwave filed a Form 8-K filing with the SEC, announcing the Transaction:

> On October 17, 2011, Powerwave Technologies, Inc. (the "Company") entered into an Agreement of Purchase and Sale (the "Agreement") with AG Net Lease Acquisition Corp. (the "Purchaser") pursuant to which the Company will sell to the Purchaser all of its interest in its current corporate headquarters facility located at 1761-1801 E. St. Andrew Place, Santa Ana, California, which is comprised of a building containing approximately 367,045 square feet and the underlying land, and an adjacent vacant 2.87 acre parcel of land (collectively, the "Real Estate"). The aggregate consideration to be paid by the Purchaser to the Company pursuant to the Agreement is $49,550,000 in cash. The closing of the sale is expected to take place prior to October 31, 2011, subject to the satisfaction or written waiver of certain closing conditions and deliveries. The foregoing description of the Agreement does not purport to be complete and is qualified in its entirety by reference to the Agreement, a copy of which will be filed with the Company's Annual Report on Form 10-K for the Company's fiscal year 2011.
>
> Pursuant to and upon closing of the Agreement, the Company expects to enter into a 15-year lease with two

ten-year extension options with the Purchaser for the Real Estate (the "Lease"), which Lease would be effective as of the date of closing of the Agreement. The Company expects the initial base rent to be approximately $3,964,000 per annum, payable in quarterly installments of $991,000, escalating 2% per year commencing on the first anniversary of the effective date of the Lease and further expects the Lease to be a triple net lease under which the Company will pay insurance, real estate taxes, maintenance and repair expenses. The material terms of the Lease will be disclosed upon the execution of the Lease.

## IV. POWERWAVE'S REVENUE INFLATION SCHEME

15. Beginning at least in the third quarter of 2010 and continuing through the second quarter of 2011, Powerwave was able to convince its largest customer (Team Alliance) to purportedly purchase products that it did not actually need in "bulk orders" at the end of each quarter. Powerwave used these purported bulk orders to improperly and materially inflate its reported revenue, in violation of Generally Accepted Accounting Principles ("GAAP").

16. The bulk orders were material to Powerwave's business. On information and belief, the last-minute bulk orders were at least $15 million in 3Q10, 4Q10, and 1Q11 and at least $25 million in 2Q11. On information and belief, the 3Q10 and 4Q10 bulk orders granted the customer a right of return if the product could not be resold, the 1Q11 bulk order was made up of defective product that would be replaced in a later quarter, and in 2Q11, Powerwave explicitly waived payment.

17. On information and belief, these last-minute bulk orders were created in order to make it falsely appear that Powerwave was performing better relative to its quarterly and year-end forecasts. In reality, the actual market demand for Powerwave's products was not sufficient to meet these forecasts, so Powerwave was contriving to create false demand through these last-minute bulk orders.

18. As a quarter drew to an end, on information and belief, Powerwave personnel would look around at whatever inventory was unsold and would then

obtain a purported bulk order from Team Alliance that permitted Powerwave to ship these items prior to the end of the quarter. The existence of these bulk orders was corroborated by former Powerwave employees who stated that such inventory had been shipped to an empty warehouse.

19. Powerwave granted Team Alliance special extended payment terms and rights of return in order to get Team Alliance to accept delivery of the last-minute quarter-end bulk orders without having to assume the full responsibility of paying for the products. Specifically, to encourage Team Alliance to place these large bulk orders, if the products could not be re-sold, Powerwave would take them back and Team Alliance would not have to pay.

20. By recognizing revenue from these bulk orders, Powerwave's financial statements violated GAAP, as reflected by the Financial Accounting Standards Board's Accounting Standards Codification ("ASC").

21. ASC 605-10-25-1 provides that revenue cannot be recognized until it is both realized (or realizable) and earned. It states:

> If an entity sells its product but gives the buyer the right to return the product, revenue from the sales transaction shall be recognized at time of sale only if all of the following conditions are met:
>
> a. The seller's price to the buyer is substantially fixed or determinable at the date of sale...
>
> b. The buyer has paid the seller, or the buyer is obligated to pay the seller and the obligation is not contingent on resale of the product...
>
> c. The buyer's obligation to the seller would not be changed in the event of theft or physical destruction or damage of the product.
>
> d. The buyer acquiring the product for resale has economic substance apart from that provided by the seller....
>
> e. The seller does not have significant obligations for future performance to directly bring about resale of the product by the buyer.
>
> f. The amount of future returns can be reasonably

estimated.

22. ASC 605-10-S25 and ASC 605-10-S99 provide that revenue can be recognized only when all of the following criteria are met: (a) persuasive evidence of an arrangement exists; (b) delivery has occurred or services have been rendered; (c) the seller's price to the buyer is fixed or determinable; and (d) collectibility is reasonably assured.

23. According to ASC 605-10-S99-1, if a sales transaction fails to meet all of the conditions of ASC 605-15-25-1, "no revenue may be recognized until those conditions are subsequently met or the return privilege has substantially expired." ASC 605-10-S99-1 precludes revenue recognition when "the seller retains the risks and rewards of ownership of the product."

24. Because Team Alliance did not accept full responsibility for the products, it did not assume the risks and rewards of ownership of the product. Therefore, the requirement that "the seller retains the risks and rewards of ownership of the product" before revenue can be recognized was violated.

25. As a result of the improper recognition of the revenue from these bulk orders, Powerwave's financial statements were materially misstated, and the failure to disclose this revenue recognition scheme was a material omission.

## V. DEFENDANTS' ROLE IN POWERWAVE'S FINANCIAL MISSTATEMENTS

26. The approval for the large end-of-quarter deals came from defendants Buschur and Michaels. Buschur and Michaels must have been directly involved in approving the end-of-quarter deals and terms because the internal controls at Powerwave required that significant deals and deals involving discounts and other concessions had to be approved by Buschur and Michaels. As the bulk orders were each between $15 and $25 million, and contained rights of return and extended payment terms, they each would have required approval by Buschur and Michaels.

27. In addition, by virtue of their positions in Powerwave, Buschur and Michaels possessed the power and authority to control the contents of its public financial statements. Buscher and Michaels directly participated in the management of the Company, they were directly involved in the day-to-day operations of the Company, they participated in drafting, producing, reviewing and/or disseminating Powerwave's false and misleading financial statements, and they were aware, or recklessly disregarded, that false and misleading statements regarding Powerwave were being issued, and approved or ratified these statements.

28. Buscher also, according to the Company's SEC filings, was responsible for overseeing the Company's sales activities. Specifically, the Company announced on May 11, 2011 a Sales Incentive Program which compensated the Company's Vice President of Worldwide Sales based on whether the Company achieved sales quotas set by Buscher.

29. Both Buscher and Michaels signed Sarbanes-Oxley certifications attached to Powerwave's financial statements, attesting personally to the fairness and truthfulness of Powerwave's financial statements and to the strength of Powerwave's financial controls and internal controls.

30. Due to the material misstatements and omissions contained in Powerwave's financial statements, its business was significantly weaker than it had led AGNL to believe. Powerwave filed for bankruptcy on January 28, 2013, and has not made the payments to Antenna it is obligated to make. As a result, AGNL has suffered damages in an amount to be proven at trial.

## COUNT I:
## RECKLESS MISREPRESENTATION

31. Plaintiffs repeat and reallege each and every allegation set forth in the paragraphs above as if fully set forth herein.

32. Defendants made, or participated in the making, of false representations and omissions about Powerwave's financial state to Plaintiff. By virtue of their

position in Powerwave and their involvement in the creation of Powerwave's financial statements, Defendants acted with recklessness as to the truth of those statements.

33. Defendants intended AGNL to rely on Powerwave's financial statements in order to induce AGNL to enter into the Transaction.

34. AGNL justifiably relied upon the information communicated by Defendants, through reliance upon the information in a transaction that Defendants intended the information to influence or knew that Powerwave so intended.

35. As a result of the reckless misrepresentations of Defendants, AGNL suffered injury and pecuniary loss, thereby entitling it to an award of compensatory and punitive damages, including all damages allowed under Cal. Civ. Code § 3343.

## COUNT II:
## NEGLIGENT MISREPRESENTATION

36. Plaintiffs repeat and reallege each and every allegation set forth in the paragraphs above as if fully set forth herein.

37. Defendants, in the course of their business, profession or employment, supplied false information for the guidance of others in their business transactions and failed to exercise reasonable care and competence in obtaining and communicating such information.

38. Plaintiffs were among the limited group of persons for whose benefit and guidance Defendants supplied, or caused Powerwave to supply the information.

39. AGNL justifiably relied upon the information communicated by Defendants, through reliance upon the information in a transaction that Defendants intended the information to influence or knew that Powerwave so intended.

40. As a result of the negligent misrepresentations of Defendants, AGNL suffered injury and pecuniary loss, thereby entitling it to an award of compensatory damages.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that they be awarded judgment against Defendants, jointly and severally, as follows:

(a) that judgment be rendered for Plaintiffs and against Defendants for actual damages in such amounts as are shown at the time of trial or hearing of the case, but not less than $75,000.

(b) that judgment be rendered for Plaintiffs and against Defendants for punitive damages in such amounts as are determined at trial or hearing of the case.

(c) that judgment be rendered for Plaintiffs and against Defendants for pre-judgment interest and post-judgment interest as allowed by law.

(d) that judgment be rendered for Plaintiffs and against Defendants for attorneys' fees and costs as allowed by law.

(e) that Plaintiffs have all other and further relief as the Court deems just and equitable.

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues.

Dated: October 17, 2013

LINER GRODE STEIN YANKELEVITZ
SUNSHINE REGENSTREIF & TAYLOR LLP

By: /s/ Ronald S. Kravitz
Ronald S. Kravitz

Attorneys for Plaintiffs AG NET LEASE ACQUISITION CORPORATION and AGNL ANTENNA, L.P.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____James V. Selna_____ and the assigned Magistrate Judge is _____Robert N. Block_____ .

The case number on all documents filed with the Court should read as follows:

### SACV13-01631 JVS (RNBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

October 17, 2013                      By  Dwayne Roberts
Date                                      Deputy Clerk

---

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| ☐ Western Division | ☒ Southern Division | ☐ Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )
AG NET LEASE ACQUISITION CORPORATION and AGNL ANTENNA, L.P.

**DEFENDANTS** ( Check box if you are representing yourself ☐ )
RONALD J. BUSCHUR and KEVIN MICHAELS

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)
Ronald S. Kravitz (SBN 129704)  (Telephone 415-489-7761)
LINER GRODE STEIN YANKELEVITZ SUNSHINE REGENSTREIF & TAYLOR LLP
One California Street, Suite 900
San Francisco, CA 94111

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same information.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)
- ☐ 1. U.S. Government Plaintiff
- ☐ 2. U.S. Government Defendant
- ☐ 3. Federal Question (U.S. Government Not a Party)
- ☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
- ☒ 1. Original Proceeding
- ☐ 2. Removed from State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Reinstated or Reopened
- ☐ 5. Transferred from Another District (Specify)
- ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No  (Check "Yes" only if demanded in complaint.)
**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    ☐ **MONEY DEMANDED IN COMPLAINT:** $ more than $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
This is a diversity case under 28 U.S.C. § 1332(a). The plaintiffs were induced to enter into a real estate transaction based on false financial statements of a company, of which defendants were top executives.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL PROPERTY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☒ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: SACV13-01631 JVS(RNBx)

CV-71 (09/13)    CIVIL COVER SHEET    Page 1 of 3

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court?<br>☐ Yes  ☒ No<br>If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action?<br>☐ Yes  ☒ No<br>If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF?<br>Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?<br>Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? | A.<br>Los Angeles County | B.<br>Ventura, Santa Barbara, or San Luis Obispo Counties | C.<br>Orange County | D.<br>Riverside or San Bernardino Counties | E.<br>Outside the Central District of California | F.<br>Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |

| C.1. Is either of the following true? If so, check the one that applies:<br>☒ 2 or more answers in Column C<br>☐ only 1 answer in Column C and no answers in Column D<br><br>Your case will initially be assigned to the<br>**SOUTHERN DIVISION.**<br>Enter "Southern" in response to Question D, below.<br><br>If none applies, answer question C2 to the right. → | C.2. Is either of the following true? If so, check the one that applies:<br>☐ 2 or more answers in Column D<br>☐ only 1 answer in Column D and no answers in Column C<br><br>Your case will initially be assigned to the<br>**EASTERN DIVISION.**<br>Enter "Eastern" in response to Question D, below.<br><br>If none applies, go to the box below. ↓ |
|---|---|

Your case will initially be assigned to the
**WESTERN DIVISION.**
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: → | **SOUTHERN DIVISION** |

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  [X] NO  [ ] YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  [ ] NO  [X] YES

If yes, list case number(s):  8:12-cv-00222-CJC-JPR

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)
- [X] A. Arise from the same or closely related transactions, happenings, or events; or
- [X] B. Call for determination of the same or substantially related or similar questions of law and fact; or
- [ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or
- [ ] D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _Ronald␣Sklar␣(signature)_   **DATE:** 10/17/2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |